## ALLSMAN et al. v. ROBINSON.
### No. 2372.

Court of Civil Appeals of Texas. El Paso.
Jan. 30, 1930.
Rehearing Denied Feb. 20, 1930.

Collins, Jackson & Snodgrass, of San Angelo, for plaintiffs in error.

Harris, Harris & Sedberry, of San Angelo, for defendant in error.

WALTHALL, J.

This suit was brought by S. H. Robinson, a real estate broker, against Harry Allsman and J. R. Bell, a copartnership doing business as such in the name of Allsman & Bell, to recover a commission on a listing for the sale of an oil and gas leasehold estate and certain properties situate thereon.

The facts are practically uncontroverted, and, as admitted under the pleading, are substantially as follows:

On August 11, 1927, Harry Allsman, of the firm of Allsman & Bell, executed and delivered to S. H. Robinson the following:

"San Angelo, August 11th, 1927.

"Mr. S. H. Robinson:

"I am handing you herewith description and prices of my river bed lease. Beginning (then follows a description of the land and other property involved in the suit, of which there is no controversy, and concluding the writing as follows). There is royalty on this property ⅛ to State, ⅛ to original permit holder, offering this property for $75,000.00 cash, subject to prior sale.

"[Signed]   Allsman & Bell,
"By Harry Allsman,
"McCamey, Texas."

The commission agreed to be paid was 5 per cent. of the purchase price. On the 11th of August, Robinson, living at Fort Worth, and Allsman, living at McCamey, were at San Angelo. Robinson, on the afternoon of that day, left San Angelo for Fort Worth, his home, arriving there late that day. On the following morning Robinson sought and found Aaron Cohen, for the purpose of putting up to him the purchase of the property involved here. Robinson showed Allsman's listing letter to Cohen, the maps showing the location of the property, where other wells were drilling, and recommended to Cohen that it would be a good buy. Robinson told Cohen that he had not investigated the property, but that he had known Allsman for

years, and believed that the property was as stated by Allsman in the above-stated letter. Cohen, on seeing the letter, maps, etc., said to Robinson, "I believe I am interested in it," and will buy if the property is as represented. Robinson suggested to Cohen that he go and look at the property. Cohen replied that he would go the following week, and would let Robinson know the day he would go, would call Robinson up from Cisco when he was ready to go. On the 15th of August, Cohen called Robinson by telephone and said to him that he and his superintendent were going out to see the property. On that day Robinson sent the following telegram to Allsman.

"Ft. Worth, Tex., Aug. 15, 1927.
"Harry Allsman, McCamey, Texas.

"I am sending a prospective buyer for your river bed property, Mr. A. Cohen stop He will be there some time this week to check this property. Be on lookout for him.
"[Signed] S. H. Robinson,
"1900 Patton Court."

Cohen was a rich man, and well able to pay the cash price of the property. On the 17th or 18th day of August, at Cisco, Cohen called Robinson, at Fort Worth, over the telephone, and said that he found the property to be as stated, and that he wanted the property at the price offered, and that Allsman & Bell had refused to deliver the property; that he expected and would insist on the property being delivered to him. Robinson went to San Angelo, called Allsman over the telephone, but Allsman refused to sell at the price stated and contended that the property was then worth more, stating its then value to be $100,000, which Cohen refused to give.

On August 18th, Cohen, from Cisco, wrote Robinson at Fort Worth, stating, in substance, that, relying upon the representations and the letter of Allsman, the letter offering the property at $75,000 cash, he had investigated the property, and was ready to buy upon approval of title, and would insist on the agreement being carried out.

In the meantime, while the above was going on, the following occurred:

In August, 1927, Mid-Kansas was drilling an offset well on an adjoining lease to the lease in this suit, about 140 or 150 feet distant. On the afternoon of August 11th or 12th, the time not made certain, the Mid-Kansas brought in its large producing well. The bringing in of the Mid-Kansas well had the effect of materially increasing the value of the Allsman & Bell well. On the morning following the listing of the property to Robinson, Allsman read in the morning paper of that date that the Mid-Kansas well had been brought in. After getting that information, Allsman made an effort to find Robinson, but learned that he had checked out at the San Angelo Hotel. Allsman returned from San Angelo to McCamey on the day following, and there learned more of the Mid-Kansas well. At McCamey he saw Bell either that day or the next, and told him of the listing of the property with Robinson. Allsman & Bell then put a price on the well of $250,000, and were not willing to take less at that time. About August 15th, Cohen had reached San Angelo, and from there he called Allsman at McCamey, over the telephone, and told him of his conversation with Robinson about the lease of the property. Allsman informed him that the property was not for sale at the price given Robinson; that the property had then been sold; that he was the agent of the then owner and had authority to sell the lease at another price. The result of the conversation was that Allsman & Bell met Cohen the day following and took him to see the property. After seeing the property, Cohen was impressed with it, and then told Allsman & Bell that he would give them the $75,000 for the property. They refused to sell it to him at that price.

On August 13, 1927, Harry Allsman and J. R. Bell, for the consideration stated of "One Hundred dollars cash in hand and other good and valuable considerations paid to us by Ila Mae Allsman and Georgie E. Bell," conveyed to them the property involved in this suit. The purported purchasers are, respectively, the wives of Allsman and Bell. The deed was acknowledged on the 13th of August and filed for record on the 22d of August, 1927.

Allsman testified: "One reason for executing this assignment to Mrs. Allsman and Mrs. Bell was to try to cancel that listing, and another reason was it was just a gift. I wanted them to have the property."

J. R. Bell testified: "I wanted to withdraw the listing and we decided to make a conveyance to our wives, and we decided in order to cancel the listing we would give it to our wives."

J. R. Bell further testified: "I never was in favor of selling it for $75,000.00, and after Mr. Allsman came down to McCamey, we talked about this other well coming in and I was on the ground when the Mid-Kansas well came in and we could not get hold of Mr. Robinson to withdraw this listing and we sold it to our wives and executed this deed in order to transfer the title and try to cancel the listing. I did not know Mr. Robinson's address or where he was. I don't guess there was any other reason for making this deed."

Mrs. Allsman and Mrs. Bell sold the property about the 22d of September, 1927, for $125,000.

Among issues submitted, the jury found:

(2) S. H. Robinson procured a purchaser, viz. Aaron Cohen, ready, able, and willing to buy the property at $75,000 cash.

(3) Harry Allsman, for Allsman & Bell, agreed with S. H. Robinson, at San Angelo, about August 11, 1927, on a commission of 5 per cent. of the sale price of the property.

The court entered judgment for Robinson and against Allsman and Bell, and against each individually, for $3,750 and interest from the 18th day of September, 1927.

The court overruled Allsman & Bell's first amended motion for a new trial, to which they excepted and prosecute this appeal by writ of error.

### Opinion.

■ There is nothing in the pleading or in the evidence, we think, which would, as a matter of law, require an instructed verdict for plaintiffs in error, and we need not discuss their first proposition suggesting that the court should have given such submitted instruction.

This suit is brought by a real estate agent, S. H. Robinson, to recover of Harry Allsman and J. R. Bell a commission based on the listing letter stated above and a parol agreement apart from the letter as to the compensation to be paid for his service in finding a purchaser. The record sufficiently discloses, we think, that the extent of the effort undertaken by Robinson was to find a purchaser ready, able, and willing to buy the property, and not to sell the property himself, on the terms offered by the seller, and the case was tried on that theory.

The record shows that Allsman was advised by Robinson that he had a purchaser in mind at the time the property was listed with him, and that he went at once from San Angelo to Fort Worth where the proposed purchaser was, found him, presented the matter of the purchase to him, showed him the location of the property on the maps, showed him the listing letter giving the description of the property, and told him what Allsman had said about the property and his confidence in the truth of what Allsman had said. The record shows that the proposed purchaser, Aaron Cohen, was at once interested, said he was, and would go and see the property, and that "if it was as stated in the letter that he would buy it." He did go; the sellers showed him the property; he was satisfied with the property, and at once offered to buy on the terms stated in the listing letter. There is no question but that the proposed purchaser was then ready, able, and willing to buy on the terms offered in the letter. The purchaser was found and in person made his offer to the seller to buy. on the terms stated within about five days from the time the listing was made.

The Mid-Kansas, in the meantime, had brought in a big flowing oil well within a short distance of this property, which very. materially changed the value of the property involved here. The owners at once concluded not to sell on the terms offered in the listing letter. No time was stated in the letter within which the purchaser must be found, and the offer to sell on the terms stated in the letter was made "subject to prior sale."

■■ Plaintiffs in error seek to defeat liability for the commission in two ways: First, the value of the property had materially changed after its listing with defendant in error, and plaintiffs in error were not then willing to sell on the terms given, and they undertook to rescind or withdraw their offer and to so notify defendant in error; second, they made a transfer of the property to their wives, and submit that such transfer was a prior sale to defendant in error's right to commission. The contract not being for a definite time, plaintiffs in error had the right to revoke their offer to sell at any time before a purchaser ready, able, and willing to buy on the offered terms was found by defendant in error. The general rule seems to be that such revocation, as between the principal and the agent, does not become effective until notice of such revocation is brought home to the agent, prior to the time he has found such purchaser ready, able, and willing to buy on the offered terms. Such notice may be express or implied, actual or constructive. An uncommunicated revocation does not have the effect to end the agency. 2 C. J. pp. 538, 539, and notes.

It is not claimed that Robinson had actual notice; that is, had actual knowledge of the fact that Allsman and Bell, either one or both, had revoked or recalled the listing letter given Robinson and his agency to find a purchaser for the property on the terms given him, there being nothing in the letter itself or in his appointment as agent that made it his duty to make inquiry as to a revocation of his agency.

■ The notice specially relied upon by plaintiffs in error, and which they pleaded and offered to prove, was the alleged notice given by them. They did give notice to Cohen before he offered to buy on the terms given Robinson that the land was not for sale at the price offered to Robinson, and that the land had been conveyed by them, but notice to Cohen was immaterial and not notice to Robinson, and not the notice to Robinson alleged. Cohen was in no wise representing Robinson in the way that notice to Cohen would be notice to Robinson. The notice to Cohen was not communicated to Robinson until after Cohen had seen the property and had offered to plaintiffs in error to take the property on the terms offered to Robinson and Cohen's offer refused. Notice to Robinson was necessary to effect the rescission of his agency, and necessarily there was no rescission of the agency until notice was given to him. Allsman made some effort to find Robinson, but, not finding him,

he made no further effective effort to notify him, although he had Robinson's Fort Worth address, and Robinson had sent him a telegram advising him that Cohen would be out to see the property and in the telegram again gave Allsman his Fort Worth address before Cohen had gone to see the property. Allsman said he replied by telegram to the telegram sent by Robinson, but did not produce the telegram. Robinson said he had no communication with Allsman until Cohen had returned to Cisco from the property and advised him of what Allsman and Bell had said and done, and had written him a letter in which he had asserted his right to buy the property on the terms given to Robinson.

Other and subsequent efforts were made by plaintiffs in error, and by Robinson, to sell to Cohen on terms other than are involved in this controversy, but they are immaterial to the issues here, and we need not discuss them.

■■ Plaintiffs in error alleged that the listing of said property to Robinson was made subject to a prior sale, and allege that prior to the time they ever heard of Aaron Cohen, and prior to the time Cohen had seen the property or in any manner considered buying the property, they had sold the property to other persons, and for such prior sale they rely upon the conveyance made to their wives, as formerly stated. The facts alleging such conveyance and the evidence with reference thereto proved by plaintiffs in error, were uncontroverted, and it was not necessary to submit a finding thereon to the jury, as contended by plaintiffs in error. It then became a matter of law as to its legal effect. The question is then presented: Was the conveyance of the property by plaintiffs in error to their wives, at the time, under the circumstances, and for the purposes stated by plaintiffs in error, such prior sale of the property as was contemplated by the parties in the listing letter, and did such conveyance have the legal effect to terminate and revoke the agency of Robinson?

The undisputed evidence shows that Robinson presented the matter of the purchase of the property to Cohen on the morning of the 12th of August, and the conveyance of the property was made on the 13th of August. But, aside from that, we prefer to base our conclusion as to the effect of such conveyance on the conveyance itself, and the testimony of plaintiffs in error as to the purpose of the conveyance.

The conveyance expressed a consideration of $100 cash and other good and valuable considerations paid to them by Mrs. Allsman and Mrs. Bell. The evidence does not show any consideration, good or valuable, other than the $100, so that the sole consideration was the recital of $100 cash.

Plaintiffs in error unqualifiedly testified that the conveyance was intended as "a gift" and for the purpose of "transferring the title and try to cancel the listing."

The expression used in the listing letter, "subject to prior sale," in offering to sell the property for $75,000 cash, evidently meant that the effort of Robinson to find a purchaser would be revoked by a bona fide sale of the property made prior to his finding a purchaser ready, able, and willing to buy on the terms offered. A conveyance made as a gift, and made for the express purpose of transferring the property in order to cancel the listing letter, and agreement to pay a commission, thus revoking the agency, would be wrongful, not bona fide, would not discharge the listing agreement, would not, we think, be a prior sale as to Robinson within the contemplation of the listing agreement. 2 C. J. p. 858, § 432, and cases cited in note.

■ The court was not in error, under the facts of this case, in failing to give a charge on the burden of proof.

The case is affirmed.